# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFERY DUNN and ANNA DUNN,** individually, collectively and t/d/b/a **JD CUSTOM POOLS, INC.,** | : : : | **CIVIL ACTION NO. 3:11-0976** |
| **Plaintiffs** | : : | **(JUDGE MANNION)** |
| v. | : | |
| **SCOTTSDALE INSURANCE COMPANY,** | : : | |
| **Defendant** | : : | |

## MEMORANDUM

Presently before the court is the defendant's motion for summary judgment, (Doc. No. 22). Finding that the genuine issues of material fact remain as to the ultimate cause of the damage to the plaintiffs' property, the motion will be **DENIED** with respect to the breach of contract and unjust enrichment claims. Finding that there is no dispute as to the defendant's basis for denying the plaintiffs' insurance claim, the motion will be **GRANTED** with respect to the bad faith claim.

## I. BACKGROUND

The defendant issued an insurance policy to the plaintiffs' business, J.D. Custom Pool and Service, Inc., with effective dates of June 17, 2008 to June 17, 2009, Policy No. CLS1511965 (hereinafter the "Policy"). (Doc. No. 25, Att. 1-2). The Policy contains several provisions related to coverage for water

damages and resulting fungus and rot:

> A. Covered Causes Of Loss
> When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
>> 1. Excluded in Section B., Exclusions; or
>> 2. Limited in Section C., Limitations; that follow.
>
> B. Exclusions
>> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of other cause or event that contributes concurrently or in any sequence to the loss.
>> ...
>>> h. "Fungus", Wet Rot, Dry Rot And Bacteria. Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".
>>>> This exclusion does not apply:
>>>> 1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or
>>>> 2. To the extent that coverage is provided tin the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.
>>> Exclusions B.1.a through B.1.h apply whether or not the loss event results in widespread damage or affects a substantial area.
>
>> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>> ...
>>> d. (1) Wear and tear; (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;...(4) Settling, cracking, shrinking or expansion;
>>> ...

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a through 3.c. But if an excluded cause of loss that is listed in 3.a through 3.c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
...
c. Faulty, inadequate or defective:
...(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance;

C. Limitations. The following limitations apply to all policy forms and endorsements, unless otherwise stated.
1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
...
c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters;
...

E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria
1. The Coverage described in E.2 and E.6 only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
a. A "specified cause of loss" other than fire or lightning; or
b. Flood, if the Flood Coverage Endorsement applies to the affected premises.
...

> G. Definitions
>> 1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.
>> 2. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.
>> ...
>> c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described.

(Doc. No. 25. Att 2). On May 18, 2009, the plaintiffs' submitted a claim under the Policy after observing that the interior of their business had sustained water damage that they believed was the result of a recent rain storm. After receiving the claim, the defendant retained an independent adjuster to inspect the property. The adjuster, Steve Geller, inspected the property and determined that the damage was caused by a poorly installed roof which had opened around the seams and allowed water into the interior. (Doc. No. 25. Att. 3 at 2). Based upon that report, the defendant denied the plaintiffs' claim. (Doc. No. 25 Att. 5). Mrs. Dunn then advised the defendant that she was disputing the denial. The defendant subsequently retained an engineer, John Nedley, P.E., to perform a second inspection of the property. Mr. Nedley also identified the condition of the roof as the reason water was able to enter the interior of the building. (Doc. No. 25 Att. 4). Specifically, Mr.

4

Nedley found that:

> The leaking of the flat and shed roofs was caused by poor construction methods incorporated during the installation of the 45 mil EPDM, including the following: the centerline seam was inappropriately secured with an unprotected wood batten strip that was screwed to the roof. As the wood decayed and the screws corroded, the seal between the wood and membrane was broken and location for water to penetrate the membrane were created...the unsecured edges of the membrane on the shed roof enabled water to penetrate the roof ...

(Id. at 5). As a result of this report, the defendant affirmed its denial of the claim. (Doc. No. 25 Att. 6).

The plaintiffs' commenced the instant action on April 27, 2011 by filing a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. No. 1 Att. 1). The defendant removed the case to this court on diversity grounds pursuant to 28 U.S.C. §1332. (Doc. No. 1). The plaintiffs' complaint comprises three counts. Count I alleges breach of the insurance contract and seeks reimbursement for the cost of repairs in the amount of $13,940.00. Count II alleges bad faith by the defendant under 42 Pa.C.S. §8371. Count III alleges the defendant has been unjustly enriched by collecting premiums but failing to satisfy the plaintiffs' claims.

On May 24, 2011, the defendant filed an answer to the complaint generally alleging that it had met all of its obligations under the Policy, raising several affirmative defenses as well as a counterclaim for a declaratory judgment regarding the scope of the Policy. (Doc. No. 2).

On May 1, 2013, the defendant filed the instant motion for summary

5

judgment, (Doc. No. 22), brief in support, (Doc. No. 23), statement of material facts, (Doc. No 24), and an appendix of exhibits, (Doc. No. 25). The defendant generally argues that plaintiffs' insurance claim is not covered under the Policy and as such, the plaintiffs' claims, which are based on alleged misconduct by the defendant, must fail. Alternatively the defendant argues that Mr. and Mrs. Dunn, as individuals, are not "insureds" under the Policy and therefore cannot bring a bad faith claim.

On May 15, 2013, the plaintiffs filed a brief in opposition, (Doc. No. 27), a responsive statement of facts, (Doc. No. 28), and an additional response to the motion for summary judgment, (Doc. No. 29). Initially, the plaintiffs allege that the defendant was dilatory in complying with discovery requests, thereby making their defense more difficult. With respect to specific arguments raised in the motion for summary judgment, the plaintiffs state the relevant legal standards but offer minimal specific evidence of any genuine factual dispute in the record. In fact, the plaintiffs' sole factual addition to the record before the court is the report of Judson Spencer, a general contractor who inspected the roof and opined that the roof was damaged by a storm. (Doc. No. 29 at 9). The plaintiffs do not, however, oppose dismissal of the bad faith claim to the extent it is alleged by the plaintiffs as individuals, but do continue to allege bad faith on behalf of J.D. Custom Pools, Inc.

On May 21, 2013, the defendant filed a brief in reply, (Doc. No. 30),

stating that any discovery delays are in fact the fault of the plaintiffs and ultimately inconsequential in light of the plaintiffs' unsupported brief in opposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen,* 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *see also Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences

drawn therefrom in the light most favorable to the non-moving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *see also Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III. DISCUSSION

The plaintiffs allege that the defendant has failed to pay proceeds for a claim that falls within the scope of the insurance Policy between the parties. The plaintiffs' complaint is comprised of claims for breach of contract, bad faith and unjust enrichment based on this alleged failure to pay. Arguing that it had no obligation to provide coverage for the specific damage to the plaintiffs' property, the defendant moves for the dismissal of the plaintiffs' claims as a matter of law. Finding that no questions of material fact remain as to the scope of the plaintiffs' insurance coverage but that questions of fact do remain as to the cause of the damage to the plaintiff's property, the court will deny the defendant's motion with respect to the breach of contract and unjust enrichment claims. The court will, however, grant the defendant's motion with respect to the bad faith claim.

In addition, the court notes that the plaintiffs' spend much of their brief in opposition arguing that they did not receive discovery materials from the defendant before the discovery deadline. Any disputes regarding discovery production should have been brought to the courts attention during the discovery period and are neither appropriate at this stage nor are they adequate to defend against a motion for summary judgment.

### A. Scope of the Policy

Generally, "[t]he interpretation of an insurance policy is solely a question

9

of law within the court's province." *Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, 2012 WL 4506059, *3 (M.D. Pa. Apr. 26, 2012) report and recommendation adopted, 2012 WL 4504600 (M.D. Pa. Oct. 1, 2012) (citing *Geisler v. Motorists Mut. Ins. Co.*, 556 A.2d 391, 393 (Pa.Super.Ct.1989)); *Meridian Mut. Ins. Co. v. James Gilligan Builders*, 2009 WL 1704474, *3 (E.D. Pa. June 18, 2009). Moreover,

> [i]n construing the policy we are mindful that policy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured....The insured's reasonable expectations are the focal point in reading the contract language....Our object, as is true in interpreting any contract, is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument....Where a provision of a policy is ambiguous, the policy is to be construed in favor of the insured and against the insurer, the drafter of the agreement....Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Meridian Mut. Ins. Co.*, 2009 WL 1704474 at *3 (citing *Geisler*, 556 A.2d at 393)(internal quotations omitted).

The court finds no ambiguity in the Policy language. The parties do not dispute that the roof, ceiling tiles and carpeting of the plaintiff's business were damaged by water that entered the interior of the building for which the Policy was issued. The plaintiffs' generally allege that the water entered the interior of the building after a storm damaged the roof and should be covered by the Policy, but do not cite a specific provision which they believe provides coverage. (Doc. No. 1 Att. 1 at 4). Water damage is covered under the Policy,

10

however, only to the extent defined under the specified causes of loss section of the Policy which states that: "[w]ater damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or stream." (Doc. No. 25 Att. 2 at 39).

The defendant argues that the damage to the plaintiffs' property was not caused by a broken pipe or other condition listed above, but rather that water entered the building through a poorly constructed and maintained roof. The defendant argues that this type of water damages is specifically limited by the Policy. The defendant cites a provision of the Policy which states that there is no coverage for "[t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless...[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters." (Id. at 35). Such a "covered cause of loss" is defined as "risk of direct physical loss" unless the loss is otherwise excluded or limited. (Id. at 1). As the court reads the Policy, such coverage would be invoked when the structure experienced some type of physical damage which is cover by the Policy and,

11

subsequently, precipitation was able to enter the interior of the structure and cause additional damage.

The defendant further outlines other provisions of the Policy which specifically exclude from coverage damage that is the result of: "[w]ear and tear; [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;...[s]ettling, cracking, shrinking or expansion." (Doc. No. 25 Att. 2 at 32). Another Policy provision provides that the defendant "will not pay for loss or damage caused by or resulting from any of the following...[f]aulty, inadequate or defective: ...[d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; [m]aterials used in repair, construction, renovation or remodeling; or [m]aintenance." (Id. at 33-34).

The court finds the language of the Policy to be sufficiently clear with respect coverage for various types of water damage. Generally, the Policy only provides coverage for water damage due to leakage from plumbing and heating components. The Policy only covers interior damage due to rain water and other precipitation when it has been proceeded by a covered cause of loss. Finally, the Policy unequivocally excludes from coverage damage that is the result of wear, tear and failures to maintain. The key determination, therefore, is whether a storm or lack of maintenance caused the roof to become porous to the point that water could reach the interior of the building.

### B. Cause of the Water's Entry

The plaintiffs' allege that the interior of the building was damaged because storm conditions, which they argue are covered by the policy, damaged the roof allowed water to enter the structure. The defendant argues that rain water entered through the unsound roof which is not covered by the Policy. The record contains the reports of three individuals who independently inspected the roof of the plaintiff's building after the damage occurred.

The two cited by the defendant both attribute the entry of water into the building to failures in the roof unrelated to storm damage. (Doc. No. 25 Att. 3-4). At the initial inspection, Mr. Geller found "the cause of loss is a result of poorly installed rubber roof from around 2000, this roof is opening around the seems [sic] and allowing the water to enter the interior. There is no storm related damage to the roof, therefore it is not included in the estimate." (Doc. No. 25 Att. 3 at 2). When the plaintiffs indicated that they were disputing the claim denial a second inspection was conducted. During the second inspection Mr. Nedley similarly found that "the centerline seam was inappropriately secured with an unprotected wood batten strip that was screwed to the roof. As the wood decayed and the screws corroded, the seal between the wood and membrane was broken and location for water to penetrate the membrane were created...the unsecured edges of the membrane on the shed roof enabled water to penetrate the roof ..."(Doc. No.

13

25 Att. 4 at 5).

The plaintiffs cite the report of Judson Spencer, who inspected the roof and opined that the roof was damaged by a storm and that "water [had] leaked into the building from the storm damaged areas." (Doc. No. 29 at 9). The plaintiffs have also filed a disclosure report indicating that they plan to have Mr. Judson testify as an expert at trial. (Doc. No. 26; Doc. No. 29 at 3).

The conflicting reports create a question of fact regarding the key determination of causation in this case. The credibility of the three individuals who have offered opinions as to the cause of the damage to the plaintiff's property is a question of fact for the jury. The court has found that a determination of the cause of the water's entry is vital to the larger question of whether the Policy afforded coverage for such damage. The scope of the Policy, in turn, will determine if the defendant's denial of the claim constituted a breach of contract or resulted unjust enrichment. Therefore, the court will deny the motion for summary judgment with respect to the breach of contract and unjust enrichment claims.

### C. Bad Faith

The plaintiffs also argue that the defendant acted in bad faith in fulfilling its obligations under the Policy. Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, outlines actions a court may take should it find that an insurer has acted in bad faith and reads:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. §8371. The Third Circuit has subsequently defined bad faith under this statute:

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005) (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)). To succeed on a bad faith claim, a plaintiff must demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) *aff'd*, 2013 WL 175175 (3d Cir. Jan. 17, 2013) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997)). Mere negligence, however, is not sufficient to establish a bad faith claim. *See id.* (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994)). In addition, a plaintiff must demonstrate bad faith by clear

15

and convincing evidence. *See id.* Courts have therefore held that the plaintiff's burden is also elevated at the summary judgment stage. *See id.* (citing *McCabe v. State Farm Mut. Auto. Ins. Co.*, 36 F.Supp.2d 666, 669 (E.D.Pa.1999)).

At the core of the parties' dispute is whether storm conditions damaged the roof allowing water in or whether the roof was not properly sealed when the storm arrived. Although the parties present experts with differing opinions as to causation, neither side has alleged that the reports are in anyway unfounded or based on some critical misperception of the plaintiffs' building so as to render the opinions unsound. Moreover, the plaintiffs do not dispute that the defendant's initial denial was based on Mr. Geller's report, (Doc. No. 25 Att. 5), and that the affirmation of the denial was based on Mr. Nedley's report, (Doc. No. 25 Att. 6). As such, the plaintiffs' cannot make out the first element of a bad faith claim, that "the insurer lacked a reasonable basis for denying benefits." The defendant's denials were based on the reports of two independent claims adjusters whose veracity has not been challenged. Although the parties continue to dispute the actual cause of the damage, the defendant cannot be said to have had no basis for denying the plaintiffs' claims. As such, the defendant's motion for summary judgment will be granted with respect to the bad faith claim.

## IV. CONCLUSION

Finding that genuine issues of material fact remain as to the cause of the entry of the water into the plaintiffs' property, which will, in turn, effect the ultimate determination of whether such damage should have been covered by the Policy, the court will deny the defendant's motion with respect to the breach of contract and unjust enrichment claims. Despite the dispute over causation, the plaintiffs cannot carry their burden of demonstrating that the defendant acted in bad faith in light of the two independent inspection reports on which the defendant relied in deciding to deny the claim. Therefore, the motion will be granted with respect to the bad faith claim. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 1, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-0976-01.wpd